FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 22, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LESTER Z., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | NO: 1:18-CV-3099-RMP <br><br> ORDER GRANTING IN PART PLAINTIFF'S AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT, without oral argument, are cross-motions for summary judgment from Plaintiff Lester Z.[1], ECF No. 11, and the Commissioner of Social Security ("Commissioner"), ECF No. 18. Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's denial of his claims for disability insurance benefits under Title II and supplemental security income under Title XVI of the Social Security Act (the "Act"). *See* ECF No. 11 at 2. Having

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER GRANTING IN PART PLAINTIFF'S AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

reviewed the parties' motions and the administrative record, the Court is fully informed. The Court grants in part Plaintiff's motion, denies the Commissioner's motion, and remands the matter to the agency for further proceedings.

## BACKGROUND

### A. Plaintiff's Claim for Benefits and Procedural History

Plaintiff Lester Z. was 21 years old on the alleged date of disability onset, March 1, 2006, and 31 years old by the date of the administrative hearing before the Commissioner. Administrative Record ("AR") 110−11.[2] Lester's date last insured for purposes of Title II of the Social Security Act is June 30, 2008. AR 110. Lester claimed that he suffers from severe anxiety and a panic disorder that have interfered with his ability to work and hold gainful employment since 2006. *See* AR 74, 265.

### B. March 9, 2016 and May 19, 2016 Hearings

Administrative Law Judge ("ALJ") Jo Hoenninger heard Plaintiff's claim for benefits at a hearing in Portland, Oregon, on March 9, 2016, with Lester and his attorney D. James Tree participating from the Social Security Administration's remote site in The Dalles, Oregon. AR 50. An impartial medical expert, Dr. Miriam Sherman, testified regarding Lester's claims. Lester also testified in response to questions from his attorney.

---

[2] The AR is filed at ECF No. 9.

ORDER GRANTING IN PART PLAINTIFF'S AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

Plaintiff testified that he had been living with his fiancée for approximately two months at the time of the hearing. AR 76. Their residence was a trailer owned by Plaintiff's parents. *Id.* He had met his fiancée over the internet and had once traveled to California to visit her for approximately three days before she joined him in Washington. *Id.* Plaintiff recalled that his travel to California went "pretty smoothly," but emphasized that his psychiatrist had prescribed Ativan for him to take on the trip, and his brother traveled with him. AR 79. Lester does not have a driver's license and relies on his parents for transportation. AR 77.

Plaintiff did not progress past seventh grade in school because he "was being bullied," but he earned his GED when he was approximately 18 years old. AR 77, 85. He worked briefly for a custodial service before losing the job due to panic attacks. AR 78. He has not engaged in any paid work since 2006. AR 77−78. He recalled that approximately two months before the hearing, he had experienced a panic attack toward the end of a movie he was watching at a movie theater. AR 78. He returned home, "had a massive nosebleed, and [was] basically bedridden . . . for about two and a half weeks." *Id.*

Plaintiff listed six medications that he was taking to address anxiety, attention deficit disorder, low testosterone, tachycardia, and blood pressure issues at the time of the hearing. AR 79−80. He reported that he had quit smoking "a long time ago" and had last consumed alcohol approximately eight months to one year before the

hearing. AR 81. He reported that he has used Adderall, an amphetamine, only "as prescribed." AR 82.

As for daily activities, Plaintiff reported that he does not know how to cook, is able to vacuum "on a good day," and does not do dishes because he and his fiancée use "mostly paper plates," and he is "usually . . . too sick to do anything." AR 83. Plaintiff expanded: "Usually I have a lot of panic attacks, and I'm not able to do much. I can't even play video games most of the time. I usually lay in bed in fear and watch Netflix." AR 83. He relies on his parents to do his laundry, although he was able to do laundry occasionally when he lived with his parents. AR 84. He regularly exercises indoors, using an aerobics video game or doing push-ups, and he finds that type of exercise to be almost as effective as medication in soothing his anxiety. AR 85.

Plaintiff reported that he had previously received a recommendation to receive counseling rather than solely pursuing care for his anxiety and panic attacks from a psychiatrist. AR 90. However, Plaintiff has been too "scared" to pursue counseling, consistent with his general apprehension toward new experiences. AR 91.

Before Plaintiff completed his testimony, the time available for the hearing expired, and the ALJ set a supplemental hearing for May 19, 2016. *See* AR 93−94. Plaintiff elected not to continue his testimony at the supplemental hearing and, when the ALJ's phone conference line would not allow Plaintiff and his attorney to both participate in the supplemental hearing, Plaintiff waived his right to be present for

the hearing. AR 100−01. The ALJ heard testimony from vocational expert ("VE") Paul Morrison in response to questions from the ALJ regarding hypothetical scenarios and follow-up questions from Lester's attorney. AR 100−08. The ALJ asked VE Morrison to consider a hypothetical individual of Plaintiff's age and education, with one year and a half of relevant work as a janitor, which is classified as heavy, unskilled work with a specific vocational preparation rating of two, who: has no exertional limits; can understand and remember only simple instructions; has sufficient concentration, persistence, and pace to complete simple, routine tasks for a normal workday and work week; should work in a non-public setting but is able to interact with co-workers and accept supervision. AR 103. The VE responded that an individual as the ALJ described could perform the past relevant work as a janitor and could also work as a laboratory helper, hand packager, or kitchen helper. AR 104.

The ALJ also posed a second hypothetical involving an individual of the same age and education as Plaintiff with the past relevant work as established who: has no exertional limits but can understand and remember only simple instructions; has sufficient concentration, persistence, and pace to complete simple, routine tasks in two hour increments for a normal workday and work week with normal breaks; is able to tolerate routine superficial interactions with the general public and a small group of co-workers; is able to accept supervision delivered in a normative fashion; can adapt to a routine work setting and should avoid normal hazards in the

ORDER GRANTING IN PART PLAINTIFF'S AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5

workplace; and will be off task twenty or more percent of the time. AR 104−05. The VE testified that an individual with those characteristics would not be able to sustain competitive employment. AR 105. Plaintiff's attorney then asked the VE to consider the hypothetical of an individual with Plaintiff's age, education, and work experience, who would miss work either two days or more per month or engage in off-task behavior greater than ten percent of the workday. AR 106. The VE opined that, in either scenario, the individual would not be able to sustain competitive employment. *Id.*

### C. ALJ's Decision

On June 28, 2016, the ALJ issued an unfavorable decision. AR 28−39. Applying the five-step evaluation process, Judge Hoenninger found:

> **Step one:** Lester met the insured status requirements of the Social Security Act through June 30, 2008, and has not engaged in substantial gainful activity since the alleged onset date of March 1, 2006.
>
> **Step two:** Lester has the following severe impairments: attention deficit hyperactivity disorder, anxiety disorder, panic disorder, and alcohol abuse. Lester has no severe physical impairments.
>
> **Step three:** Lester's mental impairments meet Listings 12.02, 12.06, and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1. The "paragraph A" criteria are met because Lester "has a history of depression; panic attacks; shortness of breath; racing heart rate; inability to function; inability to be in public

places and be around people; fear of public places and fear of being alone; fear of sleeping because of nightmares; fear of his heart; difficulty of [sic] getting along with others; difficulty with sleep; low energy; and poor concentration." AR 31. The "paragraph B" criteria are met because Lester has a marked difficulty engaging in his activities of daily living, functioning in social interactions, and maintaining concentration, persistence, or pace. Based on the ALJ's determination of how much weight and consideration to allocate to the various medical evidence in the record, the ALJ concluded that Lester's substance use during the relevant period involved overconsumption of alcohol and use of prescribed amphetamines in high doses. The ALJ proceeded to conclude that the limitations remaining if Lester were to cease his substance and alcohol use would amount to a severe impairment or combination of impairments. However, those limitations would not meet or medically equal any of the impairments enumerated in the Listings. Therefore, the ALJ proceeded to determine Lester's RFC.

**Residual Functional Capacity ("RFC"):** The ALJ found that "if the claimant stopped the substance use," Lester has the RFC to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand and remember simple instructions; has sufficient concentration, persistence, and pace to complete simple, routine tasks in two hour increments for a normal workday and workweek with normal breaks; is able to tolerate routine, superficial interactions with the general public and a small group of coworkers; is able

to accept supervision delivered in a normative fashion; can adapt
to a routine work setting and should avoid normal hazards in the
workplace.

AR 35−36.

**Step four:** Lester is able to perform past relevant work as a janitor, if he were to cease substance use. The ALJ continued, "[t]his work does not require the performance of work-related activities precluded by the residual functional capacity the claimant would have if he stopped the substance use (20 CFR 404.1565 and 416.965)." AR 38.

**Step five:** Lester's substance use is a contributing factor material to the determination of disability. Lester has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the ALJ's decision.

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on April 13, 2018. AR 1−3.

## APPLICABLE LEGAL STANDARDS

### A. Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)). "The [Commissioner's] determination that a claimant is not

disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decisions of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not the reviewing court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making a decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence

ORDER GRANTING IN PART PLAINTIFF'S AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

### B. Definition of Disability

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering the claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

### C. Sequential Evaluation Process

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 416.920. Step one determines if he is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude any gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work that he has performed in the past. If the plaintiff is able to perform his previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's RFC assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in light of his residual functional capacity and age, education, and past

work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. *Meanel*, 172 F.3d at 1113. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ISSUES ON APPEAL**

The parties' motions raise the following issues regarding the ALJ's decision:

1. Did Plaintiff establish disability prior to his date last insured?
2. Did the ALJ erroneously find that Plaintiff's controlled substance use was material?
3. Did the ALJ improperly reject the opinions of Plaintiff's medical providers?
4. Did the ALJ erroneously reject Plaintiff's subjective symptom testimony?

*Date last insured*

As a preliminary matter, the Commissioner raises as an issue in its motion for summary judgment that the record does not contain any evidence of disability, absent substance use, prior to Plaintiff's date last insured of June 30, 2008. ECF No.

18 at 4. Plaintiff replies that the "Court may look only to the reasons provided by the ALJ in the decision and may not affirm on a ground on which the ALJ did not rely." ECF No. 19 (citing *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014)). The Court agrees with Plaintiff that the Court may not affirm the ALJ's determination on a ground upon which she did not rely. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a group upon which he did not rely.").

### *Alcohol and substance use*

Once an ALJ considers all of a claimant's medically determinable impairments and determines that the claimant is disabled, if the record contains medical evidence showing drug addiction or alcoholism, then the ALJ must further determine whether the substance use is "material" to the finding that the claimant is disabled. 20 C.F.R. § 404.1535; *see also* 42 U.S.C. § 423(d)(2)(C) (providing that a claimant shall not be considered disabled if alcoholism or drug addiction is a contributing factor material to the disability determination).

The test for materiality is whether an individual would still be found disabled if he stopped using drugs or alcohol. *See* 20 C.F.R. §§ 404.1535(b); 416.935(b); *Parra v. Astrue*, 481 F.3d 742, 746−47 (9th Cir. 2007). The ALJ must "evaluate which of [the claimant's] current physical and mental limitations . . . would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or

ORDER GRANTING IN PART PLAINTIFF'S AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

all of [the claimant's] remaining limitations would be disabling." 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the claimant's remaining limitations are disabling, then the substance and alcohol abuse is not a material contributing factor to the determination of disability, and the individual is disabled, independent of his drug abuse or alcoholism. *See* 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii). The claimant bears the burden of proving that the substance use is not a contributing factor material to his disability. *Parra*, 481 F.3d at 748.

In this case, the ALJ relied primarily on the testimony of medical expert Dr. Sherman to find that Plaintiff's impairments would not meet any listing if he stopped his substance and alcohol abuse, and to find that, despite having severe impairments that would persist in the absence of substance or alcohol abuse, Plaintiff nevertheless would have an RFC to perform a full range of work at all exertional levels. AR 31−35.

Plaintiff argues that the ALJ erred in treating Plaintiff's use of "amphetamines in high doses" as "substance abuse," AR 32, without evidence to support that Plaintiff ingested amphetamines any way other than as prescribed. ECF No. 11 at 5. Plaintiff also argues that occasional maladaptive use of alcohol, and self-reports of alcohol use, also are insufficient to support an ALJ's finding of a medically-determinable alcohol abuse disorder. *Id.* at 6−7.

In 2013, the Social Security Administration issued Social Security Ruling 13-2p, 2013 SSR LEXIS 2, 2013 WL 621536 (S.S.A. Feb. 20, 2013) ("SSR 13-2p")[3], to explain the agency's policies regarding whether a claimant's drug addiction or alcoholism is material to the determination of disability.

Relevant to the ALJ's decision here, an ALJ may not base a determination that a claimant suffers from drug addiction or alcoholism on a claimant's self-reports alone. SSR 13-2p, 2013 SSR LEXIS 2 at *30. Rather, an ALJ must rely on objective medical evidence, from an acceptable medical source, to conclude that a claimant has a maladaptive pattern of substance use that amounts to a medically determinable substance use disorder. *Id*. Furthermore, maladaptive substance use does not include addiction to or use of prescription medications taken as prescribed. *Id.* at *7. Even once alcohol and drug abuse is properly established, SSR 13-2p provides that an ALJ may not rely exclusively on a medical expert's testimony and the nature of claimant's mental disorder to determine that drug and alcohol abuse is material. *Id.* at *26.

The ALJ's conclusions regarding Lester's drug and alcohol use are not supported by the weight of the evidence in the record or even, with respect to some

---

[3] Social Security Rulings do not carry the force of law. *Lockwood v. Comm'r*, 616 F.3d 1068, 1073 (9th Cir. 2015). However, they "are entitled to respect . . . to the extent that those interpretations have the power to persuade." *Id.* (citing *Christensen v. Harris County*, 529 U.S. 576, 587 (2000) and *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

of the conclusions, by the medical expert witness testimony cited by the ALJ in support. The following excerpt from the ALJ's decision is illustrative of the ALJ's error in her treatment of Dr. Sherman's testimony and her conclusions regarding Plaintiff's alcohol and substance use:

> Dr. Sherman noted that medical evidence of record indicates that since 2007, the claimant's alcohol abuse was an issue (Ex. 4F/63). Dr. Sherman pointed out that the claimant has been prescribed huge doses of Adderall for his ADHD, doses that well exceed the acceptable dosage. Side effects from that amount of amphetamine can cause psychiatric and physical symptoms. Furthermore, the record globally states that he got no treatment for his alcohol abuse and he was never involved with any psychiatric treatment other than drug treatment. Without any confirmation of the fact that his blood levels do not substantiate his use of alcohol, one has to assume that the use of alcohol continued. Both the amphetamine and alcohol use lead to anxiety disorders. Furthermore, Dr. Sherman noted that the record indicates that the claimant continued to use alcohol occasionally in 2015 (Ex. 10F/2). Additionally, in 2013 and 2014, there were indications of alcohol abuse in the record (Ex. 7F/40, 29).
>
> Dr. Sherman noted that the claimant may have been minimizing his alcohol use in his reports to medical providers and examiners.
> . . .

AR 32.

A non-examining medical expert's opinions alone cannot constitute substantial evidence to justify an ALJ's rejection of an examining or treating physician's opinion. *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999). To amount to the requisite substantial evidence, the medical expert's testimony must be corroborated by independent clinical findings or other evidence in the record. *See Magallanes v. Bowen*, 881 F.2d 747, 751−55 (9th Cir. 1989); *Thomas v. Barnhart*,

ORDER GRANTING IN PART PLAINTIFF'S AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

278 F.3d 947, 957 (9th Cir. 2002). However, the other evidence in the record that the ALJ cited to support Dr. Sherman's opinion that Plaintiff's "alcohol abuse" was an issue since 2007 is an office visit recorded by a physician in April 2012. AR 421 (Ex. 4F at 63). In addition, the conclusion during the office visit regarding alcohol abuse was based primarily on a self-report by Plaintiff that he drank "a fifth of alcohol a day" at the time. *Id.*

The excerpt further demonstrates error in that the ALJ relied on Plaintiff's use of prescription medication as prescribed to find substance abuse, and does not distinguish between mere use of alcohol and alcohol abuse. SSR 13-2p, 2013 SSR LEXIS 2 at *7, 30. There must be a pattern of maladaptive use. *Id.*

Finally, the last sentence of the excerpt mischaracterizes Dr. Sherman's testimony. Rather than "not[ing] that the claimant may have been minimizing his alcohol use in his reports to medical providers and examiners," AR 32, Dr. Sherman testified, "We don't know if he's minimizing[,]" AR 64. The ALJ's determination relied entirely on Plaintiff's self-reports to establish alcohol abuse as an impairment and also noted that "there is nothing in the record to support that the claimant has stopped abusing alcohol other than the claimant's self-report . . . ." AR 37. The ALJ's determination that Plaintiff had a clinically significant alcohol abuse impairment needed to be based on more than Plaintiff's self-reports and the conclusory opinions of a non-examining medical expert.

Moreover, when the ALJ determined Plaintiff's RFC, the ALJ found materiality based on the premise that Plaintiff stopped drinking in early to mid-2015. AR 34−35. However, Plaintiff testified only that he had last drunk alcohol approximately eight months to one year before the hearing. Comparing Plaintiff's daily activities at the time of the hearing with those before 2015 rests on a conclusion unsupported by substantial evidence that Plaintiff was abusing alcohol up until 2015. Therefore, the ALJ did not rely on sufficient evidence to conclude that Plaintiff's co-occurring mental disorders were not disabling in the absence of drug and alcohol abuse. *See* SSR 13-2, 2013 SSR LEXIS 2 at *26.

The ALJ's treatment of both the issue of whether Plaintiff's drug and alcohol use is material and the opinion evidence of the medical expert is marred by legal error and should not be affirmed. *See Stout v. Comm'r*, 454 F.3d 1050, 1052 (9th Cir. 2006) (finding that a district court should uphold an ALJ's disability determination unless it contains a legal error).

### *Remaining issues*

The Court does not address the parties' arguments regarding the treatment of the remaining medical evidence or the treatment of Plaintiff's subjective complaints because those issues may be affected by the ALJ's treatment of Plaintiff's alcohol consumption and any non-examining medical expert testimony on remand.

/ / /

/ / /

*Request for remand for benefits*

Generally, the appropriate course upon finding error in the Commissioner's determination of a claimant's application is to "remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (internal citation omitted). A court should take the exceptional step of remanding for an immediate award of benefits only where:

> (1) The ALJ has failed to provide legally sufficient reasons for rejecting . . . evidence [probative of disability], (2) there are not outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (internal quotation omitted).

Because of the ALJ's erroneous analysis of the alcohol and drug use issue, and corresponding erroneous approach to the medical evidence, questions persist regarding Plaintiff's degree of impairment throughout the relevant period. The Court does not find that the record as a whole compels a finding that Plaintiff is disabled. To the contrary, evidence in the administrative record suggests that Plaintiff may not be disabled. *See Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (remand for benefits is appropriate where "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled.").

/ / /

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED IN PART** with respect to remand and **DENIED IN PART** with respect to remanding with instructions to credit any particular evidence as true and award benefits.

2. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

3. The matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4. Judgment shall be entered for Plaintiff.

**IT IS SO ORDERED**. The District Court Clerk is directed to enter this Order, provide copies to counsel, and **close the file**.

**DATED** April 22, 2019.

                                     *s/ Rosanna Malouf Peterson*
                                     ROSANNA MALOUF PETERSON
                                          United States District Judge